**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **DANIEL SULLIVAN,** | * | |
| **Plaintiff** | * | |
| **v.** | * | **CIVIL NO. JKB-17-1881** |
| **CITY OF FREDERICK,** *et al.*, | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Daniel Sullivan is a police officer currently employed by the Frederick City Police Department ("FPD") in Frederick, Maryland. On July 7, 2017, he brought this lawsuit against the City of Frederick, the FPD, the Chief of (Frederick) Police Edward Hargis in his personal and professional capacities, two other named FPD employees, Cpt. Patrick Grossman and Lt. Thomas Tokarz, both in their personal and professional capacities, and two unnamed FPD employees, John Doe and Jane Doe, both in their personal and professional capacities. (Compl., ECF No. 1.) On September 20, 2017 the Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 12.) Plaintiff filed an amended complaint on October 18, 2017. (ECF No. 17.) Defendants moved to strike the amended complaint on November 17, 2017. (ECF No. 22.) Plaintiff has responded to the motion to dismiss and the motion to strike, and Defendants have replied to both responses. Both motions are therefore ripe for review. There is no need for a hearing to resolve the matter. *See* Local Rule 105.6 (D. Md. 2016). Plaintiff has failed to state any claim upon which relief can be granted in either his original or amended complaint, and therefore his complaint will be dismissed in its entirety, and

Defendants' motion to strike Plaintiff's amended complaint will be granted, by accompanying order.

## I. *Background*[1]

In early July 2016 "anti-police demonstrations . . . were occurring all over the country," including in Frederick, Maryland. (*Id.* pp. 3-4, ¶¶ 1-2.) In response, Plaintiff, an FPD police officer, made "'rapid deployment bags' for the FPD Special Response Team and Street Crimes Unit." (*Id.* p. 4, ¶ 2.) In mid-July, Plaintiff decided to host a pro-police "Blue Lives Matter" rally and announced as much on social media. (*Id.* p. 5, ¶ 7; *see* Social Media Post, Compl. Ex. G, ECF No. 1-7.)

The FPD, by means of unspecified "extreme measures," encouraged Plaintiff to cancel the rally, and a Lt. Pennington of the FPD, "under . . . pressure" from FPD command, called Plaintiff to "demand" that he cancel the rally. (Compl. pp. 6-7, ¶¶ 10, 14.) Though the nature of this "pressure," or what any of the "extreme measures" were, is unclear from Plaintiff's complaint, what is clear is that Plaintiff "politely declined" this alleged demand and held the rally anyway on July 24. (*Id.* ¶ 14.) Despite attempts by the FPD to discourage other police officers from attending the rally, it was a success. (*Id.* ¶ 23.) Directly after the rally Plaintiff reported for duty "to work the Frederick Fireworks make-up event" (the July 4 fireworks display had been rained out). (*Id.* ¶¶ 24, 26.) Plaintiff's was assigned to a busy intersection far from the park and was not assigned a patrol car. (*Id.* ¶¶ 26-27.) He was the only officer not assigned a patrol car. (*Id.* ¶¶ 28.)

---

[1] The facts are recited here as alleged by Plaintiff, as this memorandum is evaluating a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Plaintiff's complaint repeats the numbering for paragraphs 1-7 three times and 8-15 twice (e.g. there are three "paragraph 1"s and "paragraphs 2"s, two "paragraph 7"s and "paragraph 8"s but only one "paragraph 16"). Therefore, when citing to paragraphs 1-15 the Court will include the page number as well.

Before the rally, on July 20, a "local anarchist" (the "protester") published a Facebook post that identified Plaintiff as the organizer of the upcoming rally and accused Plaintiff of murder, referring to an officer-involved shooting in Frederick in 2008. (Compl. ¶ 19.) Plaintiff responded with a Facebook post of his own in which he defended himself against the accusation. (Sullivan Facebook Posts, Compl. Ex. N, ECF No. 1-14.) On July 23 another person reposted one of the protester's posts which seemed to call for violence at the July 24 rally. (*See* Palkovic Facebook Post, Compl. Ex. O, ECF No. 1-15; *see also* Neely Facebook Post 1, Compl. Ex. D, ECF No. 1-4.) In response, Plaintiff published a Facebook post stating that the protester was mentally ill and that "law enforcement" was "under equipped, and under trained." (Sullivan Facebook Posts at 3.)

The following day, July 25, Lt. Tokarz "reprimanded" Plaintiff and stated: "If you ever feel the need to exercise your First Amendment rights again, I hope you come to me your Lieutenant and ask my advice prior to doing so." (Compl. ¶ 31.) Roughly a week later, Plaintiff informed FPD command that he would be undergoing neck surgery, and Lt. Tokarz ordered him to turn in his gun and badge as a result. (Compl. ¶ 37.) "It was highly unusual for Tokarz to issue an oral order," but after someone demanded "written process . . . a written order was signed" in accordance with FPD policy. (Compl. ¶ 39.)

On September 20, 2016, Lt. Hennyberry informed Plaintiff of an internal investigation that the FPD had been conducting into his Facebook posts.[2] (Compl. ¶¶ 42-43.) The

---

[2] Plaintiff alleges that this was an "improper delay of notice of Officer Sullivan's rights," because it was "nearly 60 days" between August 30, 2016, when, apparently, the "official notice of internal investigation" was filed and dated, and September 20, 2016. (Compl. ¶ 33.) The meaning and significance of this allegation is unclear. September 20 is not sixty days later than August 30. Plaintiff elsewhere alleges that the investigation began on July 25, 2016 (Compl. ¶ 32), and July 23, 2016 (Compl. ¶ 46). September 20 *is* "nearly 60 days" later than July 23 or 25, but the significance of these numbers is lost on the Court. Perhaps Plaintiff believes that internal FPD investigators are required to serve notice on officers under investigation within a certain timeframe? If so, Plaintiff must do more than allege that this was "improper." "A pleading that offers labels and conclusions . . . will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

investigation concerned three "charges": that Plaintiff posted unprofessional remarks regarding the protester's mental health and that law enforcement was under equipped and under trained (two charges), and that he "used [proprietary] information . . . to determine that [the protester] is bi-polar." (*Id.* ¶ 47.) Plaintiff was ultimately "exonerated and cleared of any wrongdoing." (*Id.* ¶ 52.) On October 7, Plaintiff was "interrogated by Lt. Henneberry" who "appeared to acknowledge that the internal investigation . . . was not supported by any legitimacy or evidence and that [Lt. Hennyberry] was just doing what he had been ordered to do." (*Id.* ¶ 59.)

Plaintiff checked his personnel file on September 22, 2016 and "noticed that at least one of his evaluations for positive performance had been removed." (Compl. ¶ 53.) This was done to "remove and destroy that particular performance evaluation in order to destroy evidence of a crime committed by a one-time supervisor (now a Lt.), in order for the FPD leadership to promote that individual." (*Id.* ¶ 54.) Plaintiff also noticed that there was a letter in his personnel file from eight years prior falsely stating that there were "performance issues . . . regarding the shooting of the Active Shooter even though the Department had been ordered by prior action at law to remove all negative references from [Plaintiff's] personnel file." (*Id.* ¶ 56.) The complaint does not explain if these were Plaintiff's "performance issues," what the "shooting of the Active Shooter" was,[3] what legal action he is referring to, or what "negative references" were supposed to be removed.

On January 2, 2017, Plaintiff met with several FPD officers, including Lt. Tokarz, who informed Plaintiff that the investigation was closed and all three charges "were unfounded." (Compl. ¶ 62.) Tokarz did, however, note several "performance issues" related to the rally that Tokarz wanted to make note of in Plaintiff's file, namely that Plaintiff made deployment bags

---

[3] This might refer to the officer involved shooting in Frederick described elsewhere in the complaint, but that is not clear from this allegation.

without informing the chain of command, and had failed to inform command about the rally. (*Id.* ¶¶ 64, 65.)  Plaintiff responded that he had informed some officers about the deployment bags, and asserted that Tokarz's statement regarding the rally was a violation of Plaintiff's first amendment rights.  (*Id.* ¶ 65.)

As a result of this encounter, Lt. Tokarz produced two memoranda.  The first was from Tokarz to Sgt. Carr, Plaintiff's supervisor.  (Tokarz Memoranda 1, Compl. Ex. V, ECF No. 1-22.)  This memorandum instructed Carr to "make the following evaluation notes in [Plaintiff's] file," then listed five sections of the FPD General Orders, and concluded by saying that "These notes should reflect the fact that the above described sections were read and reviewed with [Plaintiff]."  (*Id.*)  The second memorandum was from Tokarz to Chief Hargis.  (*Id.* at 2-4.)  This memorandum was a recap of the investigation into Plaintiff's Facebook posts and other conduct related to the rally.  It noted again that the charges were "unfounded" but that there were several "performance issues," and it detailed the meeting Tokarz had with Plaintiff on January 2.  (*Id.*)

On January 9, Plaintiff filed a Public Information Act ("PIA") request with the FPD and Frederick County Information Technology Departments and the Office of the Chief of Police, "asking for e-mails and documents related to these matters."  (Compl.  ¶ 68.)  The Public Information Act is a Maryland state statute that provides for citizens to access certain types of information held by Maryland state government, similar to the Federal Freedom of Information Act.  The PIA request "has not been completely responded to."  (*Id.* ¶ 70.)

On January 17, 2017, Plaintiff met with Plaintiff.  (Compl. ¶ 73.)  Chief Hargis said he had "ordered the negative evaluation" in Plaintiff's personnel record, and he stated that Plaintiff's "exercising his First Amendment speech with the Rally might cause him to, like

another officer [Chief Hargis] knew, end up serving 'two years for manslaughter' in any future shooting." (*Id.* ¶¶ 73-74.)

In July Plaintiff filed the instant action, putting forth eight claims, including first amendment retaliation, an equal protection violation, a civil conspiracy claim, defamation, and violations of two Maryland state statutes. After Defendants moved to dismiss, Plaintiff sought Defendants' consent for additional time to respond to their motion. Defendants consented to additional time and a consent motion was entered by the Court. (ECF No. 15.) On October 18, 2017, more than twenty-one days after Plaintiff had received Defendants' motion, Plaintiff filed a response and an amended complaint. (ECF Nos. 16, 17.) Defendants moved to strike Plaintiff's amended complaint on November 17, 2017. (*See* ECF No. 22.) Before the Court is Defendants' motion to dismiss (ECF No. 12) and motion to strike Plaintiff's amended complaint (ECF No. 22.)

## II.     *Standards for Motion to Strike Amended Complaint and Motion to Dismiss*

A plaintiff has twenty-one days after receipt of a Rule 12(b) motion to amend his complaint. Fed. R. Civ. P. 15(a)(1). Under Federal Rule of Civil Procedure 15(a)(2), if a party has missed the Rule 15(a)(1) deadline for amending a pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave." "Whether to grant a motion for leave to amend is within this Court's discretion," *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 308 (D. Md. 2015), and the Court "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2). The Fourth Circuit has stated that leave to amend under Rule 15(a) should be denied only in three situations: when the opposing party would be prejudiced, when the amendment is sought in bad faith, or when the proposed amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). "[A]n amendment is futile if it 'would not

survive a motion to dismiss.'" *Young*, 108 F. Supp. 3d at 308 (quoting *Rawlings v. City of Baltimore,* Civ. No. L–10–2077, 2011 WL 1375603, at *4 (D. Md. April 12, 2011)).

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

### III. *Analysis*

#### a. **Motion to Strike Amended Complaint**

There is some confusion as to whether Plaintiff properly secured consent from the Defendants for additional time to file his amendment complaint.[4] Regardless, the Court has considered the amendments and, as will be explained below, determined that such amendments

---

[4] Plaintiff received consent from the Defendants for additional time to respond to Defendants' Rule 12(b) motion. (*See* ECF No. 14.) Plaintiff contends that Defendants impliedly consented to additional time for Plaintiff to amend his complaint. (Opp'n to Mot. Strike Am. Compl. ¶ 3, ECF No. 23.) Defendants contend that they only agreed to an extension of time for Plaintiff to respond to the motion. (*See* Reply to Pl.'s Opp'n to Def.'s Mot. to Strike 1, ECF No. 24.) As the amendment is futile and Defendants' motion to strike will be granted on those grounds the issue is moot, but in the future Plaintiff's counsel should more clearly explain, both to opposing counsel and the Court, what he is requesting when he asks for additional time beyond that provided in the Federal Rules.

would be futile.  Therefore, Defendants' motion to strike Plaintiff's amended complaint will be granted.  *See Young*, 108 F. Supp. 3d at 308.

### b.  Motion to Dismiss

Plaintiff has brought eight claims, and Defendants have moved to dismiss Plaintiff's complaint in its entirety.  The Court has organized Plaintiff's claims into the following categories for the purpose of analysis:  Counts I, III, and V are "Free Speech Claims," Counts VI and VIII are "State Statutory Law Claims," Counts II and IV are "Claims Requiring Class Based Discrimination or Animus," and Count VII is a state common law claim of defamation.  They will be discussed in that order.

### i.  Free Speech Claims

Plaintiff has brought three claims alleging the same basic conduct.  Count I is titled a first amendment retaliation claim brought under 42 U.S.C. § 1983.  Count III appears to be the same retaliation claim brought under the Maryland Declaration of Rights, and Count V is a "first amendment retaliation – hostile work environment" claim also brought under 42 U.S.C. § 1983. Although these claims are essentially duplicative, and susceptible to the same analysis, for the sake of clarity the Court will discuss each in turn.

### 1.  Count I – First Amendment Retaliation

As an initial matter, Plaintiff appears to confuse his ostensible first amendment *retaliation* claim – i.e. that he was retaliated against for exercising his first amendment rights – with a first amendment claim – i.e. that Defendants violated his first amendment rights directly. Count I is labeled "First Amendment Retaliation" but in the paragraphs following Count I Plaintiff alleges the following:  that "Defendants [sic] requirements under law, regulations and/or policy that Plaintiff first obtain the Frederick Police Department's permit prior to expression of

his First Amendment activity in a traditional public forum such as Facebook and City sidewalks and parks are unconstitutional facially and as applied to Plaintiff . . . because they ban and regulate speech in a traditional public fora [sic]," and that "Defendants' policies and actions against Plaintiff's speech are not narrowly tailored to serve a compelling government interest" and are "overbroad." (Compl. ¶¶ 83-84, 86.) These conclusory statements are indicative of a first amendment claim, but have little to do with a first amendment retaliation claim. Although the Court will construe all pleadings "so as to do justice," Fed. R. Civ. P. 8(e), it will not bend over backwards in an attempt to salvage whatever claims may arise from the allegations of a complaint. Plaintiff, who is represented by a lawyer, explicitly stated a claim of first amendment retaliation and his Opposition to Defendants' motion to dismiss makes clear that is how he views his claim. Furthermore, his proposed Amended Complaint did not amend this Count in any way. The Court will therefore ignore his allegations that attempt to state a claim for a more general first amendment violation.[5]

A first amendment retaliation claim arises when a public employee exercises his first amendment rights and then is retaliated against by his employer. *See Crouse v. Town of Moncks Corner*, 848 F.3d 576, 583 (4th Cir. 2017). A first amendment retaliation claim is analyzed under the "*McVey* test," which has three prongs. *See Adams v. Trustees of the University of N.C.-Wilmington*, 640 F.3d 550, 560-61 (4th Cir. 1998) (quoting *McVey v. Stacy*, 157 F.3d 271, 277-78 (4th Cir. 1998)). A plaintiff must prove (1) that his speech was protected under the first amendment, (2) that his interest in speaking outweighs the government employer's interest in providing efficient services, and (3) that his speech was the cause of the retaliation. *See id.* To satisfy the first prong a plaintiff must demonstrate that he "was speaking as a citizen upon a

---

[5] Regardless, these allegations are wholly conclusory and "devoid of further factual enhancement," so even if the Court *were* to consider Plaintiff's claim as a first amendment claim and not a first amendment retaliation claim, it would fail under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

matter of public concern [and not] as an employee about a matter of personal interest." *Id.* (quoting *McVey*, 157 F.3d at 277). The second prong asks the Court to balance the interests of the plaintiff in being free to speak his mind against the interests of the employer in "being able by appropriate disciplinary action to avoid disruption of its internal operations." *Berger v. Battaglia*, 779 F.2d 992, 997 (4th Cir. 1985); *see Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). "To properly balance these interests, courts have required that the nature of the retaliatory acts committed by a public employer be more than *di minimis* or trivial." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000). The third prong asks whether the employee's speech "was a substantial factor in the employee's [adverse employment] decision." *Adams*, 640 F.3d at 561 (quoting *McVey*, 157 F.3d at 278) (alteration in the original).

The Court's ability to analyze whether Plaintiff has stated a claim for first amendment retaliation in Count I is complicated by the fact that it is quite unclear what, exactly, were the alleged retaliatory acts. Aside from the aforementioned conclusory statements regarding first amendment law in general, Count I does not really detail factual allegations regarding retaliation. In fact, Plaintiff barely uses the word "retaliate" under Count I, and in doing so only further complicates the matter. Plaintiff alleges that as "a direct and proximate result of *Defendant's* [sic] actions, Plaintiff was unlawfully investigated, defamed and retaliated against." (*Id.* ¶ 88 (emphasis added).) Presumably Plaintiff meant that as a direct result of *his* actions, *Defendants* (plural) retaliated against him, and not that he was retaliated against by some Defendants as a result of conduct engaged in by one Defendant. Even if the Court presumed as much, this "naked assertion" of retaliation, without "further factual enhancement" – to wit, *some* explanation of what constituted retaliation – "will not do." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Plaintiff's complaint contains eighty paragraphs of facts, and it is not

the job of this Court, nor is the burden placed on the Defendant, to comb through those pages of factual allegations and guess at what conduct Plaintiff believes constitutes a first amendment retaliation claim.

Even if this Court were to ignore Plaintiff's failure to concisely and clearly plead his case, and even if the Court were to presume that Plaintiff engaged in protected first amendment speech when he hosted the Blue Lives Matter rally (assuming that is the speech that Plaintiff believes is protected), the Court would nevertheless dismiss this Count because Plaintiff has failed to successfully allege that his interest in so speaking outweighed his employer's interest in efficient operations.  That is, were whatever retaliatory actions Plaintiff suffered both *di minimis* in nature and designed to maintain an efficient work environment, not to retaliate against the Plaintiff?  Plaintiff has not effectively plead past the "*di minimis*" and "efficient work environment" hurdles.

Courts have often found that retaliatory conduct satisfies the second prong of the *McVey* test when that conduct relates to "promotion, transfer, recall, and hiring," but courts have not so found "where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands."  *Suarez*, 202 F.3d at 686 (internal quotation marks and citations omitted).  For example, a court in this District was recently confronted with a plaintiff who had been demoted and had received poor evaluations, all allegedly in retaliation for her first amendment activities. *Farrell v. Board of Educ. of Allegany Cty.*, 2017 WL 1078014, at *1-*2 (D. Md. Mar. 21, 2017). The court found that the demotion rose to the level of actionable retaliatory conduct, but the poor evaluation did not.  *Id.* at *5.

Even when the Court draws all inferences in the Plaintiff's favor, the undisputed facts are these:  Plaintiff is still a member of the FPD, he was investigated by the FPD and cleared of any

wrongdoing, his pay has not been reduced, and he has not been demoted. These facts make Plaintiff's case distinguishable from most first amendment retaliation cases. *See, e.g.*, *Crouse*, 848 F.3d 576 (employees were "forced to resign"); *McVey*, 157 F.3d 271 (employee was fired); *Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999) (police officer was suspended); *Stroman v. Colleton Cty. Sch. Dist.*, 981 F.2d 152 (4th Cir. 1992) (teacher was fired). Plaintiff has alleged nothing more than, at worst, some "criticism, false accusations, [and] verbal reprimands." *Suarez*, 202 F.3d at 686.[6] Therefore, the Court finds that aside from failing to properly plead what actions of his employer constituted retaliatory conduct, Plaintiff has also failed to allege any conduct that would constitute more than a *di minimis* harm and thus satisfy the second prong of the *McVey* test. Accordingly, Count I will be dismissed.

It is worth briefly noting that Count I should be dismissed for the additional reasons that the individual Defendants are shielded from Section 1983 liability by qualified immunity and the Plaintiff has not alleged facts sufficient for municipal liability under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). Individuals acting in their official capacity are shielded from Section 1983 liability by qualified immunity unless their actions violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *See DiMeglio v. Haines*, 45 F.3d 790, 795 (4th Cir. 1995) (internal quotation marks omitted). And to establish municipal liability for a Section 1983 violation, a plaintiff must allege that (1) the city had "actual or constructive knowledge of the [improper] custom and usage by its responsible policymakers" and (2) that there was a "failure by those policymakers as a matter of specific

---

[6] Some of the seemingly nefarious conduct alleged in Plaintiff's complaint cannot serve as the basis for a retaliation claim because it was not done in retaliation for Plaintiff exercising his first amendment rights. (*See, e.g.*, Compl. ¶ 53-54 (stating that one of Plaintiff's positive performance evaluations was removed from his file, but that it was done "in order to destroy evidence of a crime committed by a one-time supervisor").

intent or deliberate indifference to correct or terminate the improper custom and usage." *Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 210 (4th Cir. 2002) (internal quotation marks omitted). These Defendants were acting in their official capacities, and as the above discussion makes clear, their conduct did not violate *any* constitutional right, let alone a "clearly established . . . constitutional right[] of which a reasonable person should have known." *DiMeglio*, 45 F.3d at 795. Plaintiff failed to allege any "improper custom and usage" that the City knew about, and therefore failed to allege facts which would give rise to municipal liability for this Section 1983 action. *See Flanagan v. Anne Arundel Cty*, 593 F. Supp. 2d 803, 809-10 (D. Md. 2009) (citations omitted) ("[T]o state a claim under § 1983, plaintiffs must allege a plausible policy or custom . . . that caused the constitutional violation."). Therefore, Count I must be dismissed as to the individual Defendants and to City, which means that it must be dismissed in its entirety.

### 2. Count III – Maryland Declaration of Rights Retaliation

Count III purports to be a separate claim for retaliation under Article 40 of the Maryland Declaration of Rights. This provision of the Maryland Declaration of Rights is read *in pari materia* with the First Amendment of the United States Constitution, and therefore the Court can see no reason why this claim would be substantively distinct. *See Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 213 n.2 (4th Cir. 2002) (quoting *Patterson v. Maryland*, 741 A.2d 1119, 1128 (Md. 1999) ("We construe 'guarantees in the Declaration of Rights to be in *pari materia* with similar provisions of the federal constitution.'"). This Count is similarly indistinct from Count I in that Plaintiff here also fails to allege any specific act that constitutes retaliation. Therefore, for the reasons explained above, Count III fails to state a claim upon which relief can be granted and will be dismissed.

### 3. Count V – First Amendment Retaliation – Hostile Work Environment

Count V is also duplicative of Count I, and will be dismissed for the same reasons. It is somewhat unclear whether one can bring a "hostile work environment first amendment retaliation" claim, and what precisely that would entail. The Second Circuit, for instance, appears to permit such a claim, though not necessarily by that name. *See Philips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) ("[A] combination of seemingly minor incidents [may] form the basis of a constitutional retaliation claim once they reach a critical mass."); *see also Monsour v. New York State Office of People with Developmental Disabilities*, 2014 WL 975604, at *6-*7 (N.D.N.Y. Mar. 12, 2014) (discussing a hostile work environment retaliation claim). Neither party here has presented a Fourth Circuit case that clearly permits such as cause of action, though neither party has presented a case that disallows it either.

Under other facts, this may present a challenging question, but here the viability of such a claim is mainly an academic exercise. Whether the Plaintiff construes his claim as a "hostile work environment" claim – i.e. so many minor acts that together constitute a viable retaliatory action – or as a more standard first amendment retaliation claim, it still fails. Plaintiff's original complaint alleged no facts that constitute a hostile work environment. The amended complaint contains an additional paragraph setting forth some "unwelcome" acts, including the investigation, Chief Hargis' statement regarding criminal prosecution, denial of a patrol car, and a "several-day oral order to turn in his gun and badge." (Am. Compl. ¶ 107.) This amendment is futile. As explained above, Plaintiff has not suffered any acts that, whether viewed in isolation or together, are serious enough to outweigh the Defendants' interest in maintaining efficiency. For this reason, and because Defendants are entitled to qualified immunity and Plaintiff has

failed to allege facts sufficient for municipal liability under Section 1983, Count V will be dismissed.

## ii. State Statutory Law Claims

Plaintiff brings two claims under Maryland state statutes, over which the Court will exercise supplemental jurisdiction: A violation of the Law Enforcement Officer's Bill of Rights ("LEOBR"), Md. Code Ann., Public Safety §3-101 *et seq.*, and a violation of the Public Information Act ("PIA"), Md. Code Ann., General Provisions, § 4-101 *et seq.* Both claims are misplaced.

Count VI in Plaintiff's amended complaint is for an "Abusive & Hostile Work Environment − Retaliation," under the LEOBR and Md. Code Ann. § 3-701, the Freedom of Association and Assembly Protection Act ("FAAPA"). (Am. Compl. p. 22.) The LEOBR "provides an exclusive and self-contained procedure for the vindication of the rights granted within it: an application for [a] show cause order." *Hatley v. Tuffy*, Civ. No. JFM-09-711, 2010 WL 4923831, at *4 (D. Md. Dec. 2, 2010). It does not, as Plaintiff alleges, create a "common law right" to sue for "abusive & hostile work environment." (Compl. p. 22.) In fact, it is unclear how any statute could create a "common law right." Defendants correctly note that it is similarly "unclear what Plaintiff is trying to accomplish by adding a reference to the [FAAPA]" – a law that provides some regulations for law enforcement investigations that might impact free speech rights – in his amended complaint. (Mot. to Strike Am. Compl. and Reply Mot. Dismiss 14, ECF No. 22.) Plaintiff appears to think that the LEOBR and FAAPA work in tandem to create a "common law right of all police officers" to be "free of abuse, hostility, discrimination or retaliation," both in their "work environment and private life." (Am. Compl. ¶¶ 110-11.) Defendants' argue that, under the framework provided in *Fangman v. Genuine Title, LLC*, 136

A.3d 772, 779-80 (Md. 2016), the Court should find that the FAAPA does not create a private cause of action. (Mot. to Strike Am. Compl. and Reply Mot. Dismiss at 14-15.) The Court will leave that ultimate question to the Maryland judiciary, but, after reading the text of the FAAPA, it does find that whatever cause of action the FAAPA may or may not provide, it does not create a right of all police officers to be free from any abuse, hostility, discrimination or retaliation whether suffered at home or at work, let alone a cause of action to enforce that right. Plaintiff did not avail himself of the procedure provided by the LEOBR and a confusing citation to the FAAPA does not save this claim. Accordingly, it will be dismissed.

Plaintiff also included a claim for violation of the PIA in Count VIII. The PIA permits "suits by persons who have been denied access to Maryland public records [but] requires suit to be filed in a state circuit court." *Sowe v. Maryland*, Civ. No. WDQ-09-0621, 2009 WL 2730284, at *2 (D. Md. Aug. 24, 2009) (citation omitted); *see* Md. Code Ann., General Provisions § 4-362(a). The PIA therefore does not "provide[] a basis for this suit" in Federal Court and this claim will be dismissed without prejudice. *Sowe*, 2009 WL 2730284, at *2.

### iii. Claims Requiring Class Based Discrimination or Animus

Plaintiff brought two claims that require a showing of class based discrimination or animus. Count II is an equal protection violation under 42 U.S.C. § 1983, and Count IV alleges a civil conspiracy to deprive Plaintiff of Constitutional rights under 42 U.S.C. § 1985. To prove an equal protection violation, a plaintiff must generally demonstrate that he was "a member of a protected class." *Lanier Const. Co., Inc. v. City of Clinton, N.C.*, 924 F. Supp. 2d 659, 665 (E.D.N.C. 2013). A plaintiff "who is not a member of a protected class may prevail on an equal protection claim" by demonstrating unequal treatment when there is "no rational basis for the difference in treatment," but this "'class of one' theory . . . does not apply in the public

employment context." *Uzoukwu v. Prince George's Community College Bd. of Trustees*, Civ. No. DKC-12-3228, 2013 WL 4442289, at *9 (D. Md. Aug. 15, 2013) (internal quotation marks omitted). To state a claim for a civil conspiracy under Section 1985, a plaintiff must prove that two or more persons were "motivated by a specific class-based, invidiously discriminatory animus." *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)).

Plaintiff has not alleged that he was discriminated against because of his membership in a protected class. As described above, he has not even properly alleged that he was discriminated against for engaging in first amendment protected activity, but to the extent that such conduct underlies these claims it is misplaced. *See Edwards*, 178 F.3d at 250 (quoting *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997) ("A pure or generic retaliation claim, however, simply does not implicate the Equal Protection Clause.")). As Plaintiff did not allege any discriminatory conduct motivated by his membership in a protected class, Counts II and IV will be dismissed.

### iv. Defamation

Plaintiff alleges that two memoranda produced by Lt. Tokarz as well as unspecified "negative statements" in Plaintiff's personnel file constituted "defamation and slander." (*See* Compl. ¶¶ 113-19.) The tort of defamation has four elements: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Offen v. Brenner*, 935 A.2d 719, 723-24 (Md. 2007). Plaintiff's claim fails on the first element.

As an initial matter, Maryland has retained the common law distinction between defamation *per quod* and defamation *per se*. *See Ind. Newspapers, Inc. v. Brodie*, 966 A.2d 432,

441 (Md. 2009). Defamation *per se* is defamation on its face – i.e. the "words themselves impute the defamatory character." *Metromedia, Inc. v. Hillman*, 400 A.2d 1117, 1123 (Md. 1979). Defamation *per quod* occurs when the alleged defamatory statement itself does not "impute the defamatory character" but rather extrinsic facts are necessary to do so. *Id.* If the plaintiff's cause of action is defamation *per quod* and he fails to plead the extrinsic facts that "establish the defamatory character of the words sued upon, the omission to plead them makes the complaint demurrable." *Id.* This is all to say that the Court determines whether or not the alleged defamatory statements are indeed defamatory on their own. To the extent that Plaintiff believes they are defamatory due to the context in which they were made, he has failed to properly plead as such.

The alleged defamatory statements here are in the nature of performance reviews, and such statements can be defamatory. *See Samuels v. Tschechtelin*, 763 A.2d 209, 245 (Md. Ct. Spec. App. 2000). However, not "every negative evaluation of an employee's performance is potentially defamatory. Rather, the words must go so far as to impute to him some incapacity or lack of due qualification to fill the position." *Id.* (quoting *Leese v. Baltimore Cty.*, 497 A.2d 159, 176 (Md. Ct. Spec. App. 1985)) (internal quotation marks and alterations omitted). The statements made in this case do not go that far. Essentially, the memoranda referenced by Plaintiff outline that an investigation was conducted, that such investigation cleared Plaintiff of any charges, and that Plaintiff nevertheless had some "performance issues." They do not suggest that Plaintiff is incapable of performing his job or lacks any qualifications. Furthermore, the second element of a defamation claim is that the statements are false and Plaintiff does not actually plead that any of these statements are false. On the contrary, Plaintiff alleges that some of these statements are clearly true – he states throughout his complaint that he was indeed

investigated and was indeed cleared of any charges. With regard to the "negative statements" in Plaintiff's personnel file, Plaintiff has failed to allege what those statements consisted of, and simply calling them "negative" does Plaintiff no favors. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 ("A pleading that offers 'labels and conclusions . . . will not do.'")). Furthermore, these statements in Plaintiff's personnel file and those contained in the memoranda are protected by a conditional privilege.

Under Maryland law, defamatory statements will not serve as the basis for a defamation claim if they were made under a "conditional" or "qualified" privilege. *See Woodruff v. Trepel*, 725 A.2d 612, 622 (Md. Ct. Spec. App. 1999). As the Maryland Court of Special Appeals has explained:

> Conditional privileges rest upon the notion that a defendant may escape liability for an otherwise actionable defamatory statement, if publication of the utterance advances social policies of greater importance than the vindication of a plaintiff's reputational interest. For instance, a conditional privilege exists when the occasion shows that the communicating party and the recipient have a mutual interest in the subject matter, or some duty with respect thereto.

*Id.* (internal quotation marks and citations omitted). "[C]ommunications arising out of the employer-employee relationship clearly enjoy a qualified privilege." *Montgomery Investigative Servs., Ltd. v. Horne*, 918 A.2d 526, 532 (Md. Ct. Spec. App. 2007) (quoting *Stevenson v. Baltimore Baseball Club*, 243 A.2d 533, 536 (Md. 1986)). This privilege can only be overcome by evidence of malice by the defendant-employer, for example if the defendant publishes the defamation "in reckless disregard of the truth [or] by publication to third persons other than those who hearing is reasonably believed to be necessary or useful." *General Motors Corp. v. Piskor*, 352 A.2d 810, 816 (Md. 1976). Here, these statements were made in the context of an employer-employee relationship and arose out of an investigation into the employee's conduct. Furthermore, the information was only circulated internally and to interested parties. Therefore,

even if the Court found that these statements were defamatory, it would nonetheless find that Defendants were protected by a conditional privilege. For this reason, and because the Court does not find that the statements in the memoranda or those regarding Plaintiff's job performance were defamatory, Count VII will be dismissed.

## IV. *Conclusion*

Plaintiff has only stated conclusory allegations with respect to his free speech retaliation claims (Counts I, III, and V) and furthermore has not alleged any conduct that is sufficiently adverse so as to be actionable as a free speech retaliation claim under the *McVey* test. Moreover, Plaintiff failed to allege sufficient facts to overcome qualified immunity or establish municipal liability for the federal constitutional claims. Therefore, Counts I, III, and V will be dismissed. Counts VI and VIII state unavailable claims under Maryland state statutes and will be dismissed, although the claim under Count VIII may be available in a different forum, and thus Count VIII will be dismissed without prejudice. Counts II and IV require that Plaintiff demonstrate discrimination based on his inclusion in a protected class and he has failed to allege such discrimination. Therefore Counts II and IV will be dismissed. Plaintiff failed to allege any defamatory conduct, and Defendants have a conditional privilege with regard to the alleged defamatory statements. Therefore Count VII will be dismissed. The amendments Plaintiff made to his complaint do not alter these results., rendering it futile. Accordingly, Plaintiff's complaint will be dismissed in its entirety, and Defendants' motion to strike Plaintiff's amended complaint will be granted, by accompanying order.

DATED this 9th day of January, 2018.

BY THE COURT:


_____/s/_____
James K. Bredar
Chief Judge